IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| JONATHAN TALLMAN, an individual, | No. 2:23-cv-01773-HL |
| Plaintiff, | **FINDINGS AND RECOMMENDATION** |
| v. | |
| DILLON SPENCER, an individual. | |
| Defendant. | |

HALLMAN, United States Magistrate Judge:

Plaintiff Jonathan Tallman filed this action against Defendant Dillon Spencer, alleging that Spencer's Facebook posts about Tallman were false and defamatory. Tallman seeks damages and injunctive relief under Oregon state law. Spencer now brings this anti-SLAPP motion against Tallman, seeking dismissal of Tallman's claims of defamation, defamation per se, and false light pursuant to Oregon Revised Statute (ORS) § 31.150. Def.'s Mot. to Strike, ECF 10. This Court heard oral argument on this motion on March 5, 2024.[1] ECF 21. For the following reasons, Spencer's motion should be GRANTED.

---

[1] This Court heard combined oral argument in this case and a related case, *Tallman v. Miller*, 2:23-cv-01592-HL. But the cases are not otherwise consolidated.

Page 1 – FINDINGS AND RECOMMENDATION

## BACKGROUND

Spencer and Tallman both lived in the small town of Boardman, Oregon. Compl. ¶¶ 1-2, ECF 1-1. Tallman is a youth soccer coach, Tallman Decl. ¶ 47-48, ECF 14-1, and has unsuccessfully run for local office four times between 2019 and 2023, *id.* ¶¶ 4-7. He also operates a local coffee shop called The Farmer's Cup. Compl. ¶ 5. Tallman employed Michaela Miller, who worked at the coffee shop from April to August of 2019 when she was 16 years old. Miller Decl. ¶¶ 3, 20, ECF 13. Miller is Spencer's stepsister. Def.'s Mot. 1.

Miller alleged that she experienced "highly inappropriate" conduct from Tallman when she worked at the coffee shop, including Tallman rubbing her shoulders and arms, commenting on her appearance, putting ice down her shirt, smacking her buttocks, touching her breasts, and asking about her sexual relations with her boyfriend. Miller Decl. ¶ 6-14. Around that time, at a high school sports practice, Miller's coach overheard her talking about that conduct with her teammate and coworker. *Id.* ¶ 20. The coach reported it to the Boardman Police Department, which investigated and prepared a police report containing the allegations from Miller. Tallman Decl. ¶ 10-11. But Tallman was not charged with any crimes. *Id.* ¶ 13.

The grounds for Tallman's defamation, defamation per se, and false light claims—and the conduct at issue in this anti-SLAPP motion—are a related set of 2023 Facebook posts from Spencer.[2] On August 25, 2023, a community member, Frankie Nunez Lezamo, publicly posted an excerpt from the police report to Facebook. *Id.* ¶ 16, Ex. B. Miller then shared the post, including the police report, accompanied by the following caption:

---

[2] As discussed below, the actionable statements at issue in this case arose within the one-year statute of limitations. Spencer's statements made outside the applicable statute of limitations– which are addressed in some detail by Tallman in response to this motion, Pl.'s Resp. in Opp'n to Mot. to Strike 11-12, ECF 14, –are not relevant to this discussion.

I hope my story will be used to make a difference in the protection of the children in Boardman

here's the truth

I was 16 when this police report was made
To young to understand that What i was experiencing was building blocks to an agenda

To young to know where to set boundaries and when to speak up

For the past 4 years I watched from behind the screen as a vague description of my story has been told on social media, Used to protect our city and its children from a man who I once considered a family friend,
Someone who used to play catch with me in his parents back yard, give me a ride to practice, teach me how to drive, come to my sports games, drop off strawberry lemonade at my house, and so much more
,But what was a 40 year old man doing creating a fun loving space for a 13-16 year old girl
Something I wish I would have asked myself sooner
gratefully I was lucky enough to have been surrounded by friends and coaches who started to pick up on the sexual and controlling behaviors this man was using towards me, where it could have gone I don't even want to try to imagine

As an adult now I look back more on my situation and it breaks my heart I was to naive to realize what was going on, there was a lot of stuff that I was to embarrassed to say to the police and I wish I could go back protect my self and my friends, unfortunately I can't
But my story can make make a difference in protecting the children now

This is not the first time this man has tried to receive a position where he would be given the opportunity to work one on one with kids, given the opportunity to create a "fun and loving" environment for them,
I am also not the only one with a story already, and unfortunately I wasn't the last.

Publicly announcing this is one of the most terrifying things I have ever posted. Putting myself in a position to be called names, accused of being a liar, and for my name to be talked amongst the people of Boardman

But it is my goal that the city will start to see this man as a Predator
And use my story to protect others

Thank you Nunez family and so many other family's who have been my supporters through
this journey, I would not have had the confidence to speak up if it wasn't for you

*Id.* ¶ 17, Ex. C.

That same day, April Collier noted on the Boardman Oregon Community Info Page that she was "[v]ery curious and concerned about the removal of a couple of recent posts," including the above post by Miller. Compl. ¶ 10. Spencer had seen his stepsister's post, which was consistent with what she had told him in 2020 about her experience with Tallman. Spencer Decl. ¶¶ 3, 12, ECF 11. Spencer responded to Collier's post and accused the administrator of the New Boardman community Facebook group of censoring messages about Tallman, stating, "Is this about you censoring anyone that brings up a certain individual, who claims to own a local business, sexually harassing/ assaulting the employees of said business? Are you silencing the voice of a minor that was targeted by a predator??" Spencer Decl. ¶ 13, Ex. 7. Spencer, in another comment, discussed Tallman's attempts to become a soccer coach and the fear that victims would have testifying against their aggressors. *Id.*

At issue in this anti-SLAPP motion are the following statements made by Spencer:

First, in a comment after the August 25, 2023, post, Spencer wrote "predators have a way of squeezing through the cracks and the only way to keep them in the light is throu[gh] public forums. This isn't opinion. This is a man who victimized children and capitalized on their fear of testifying." Spencer Decl. ¶ 14, Ex. 8.

Second, Spencer commented:

> when a victim is too scared to sit on the witness stand and it's word vs word, then it's hard to take something to trial. However, when there is multiple victims, and the predator all but boasting about getting away with it, it's pretty easy to connect the dots and see the true colors. Protect the children at all costs.

Compl. ¶ 12; Spencer Decl. ¶ 13, Ex. 7.

Page 4 – FINDINGS AND RECOMMENDATION

Third, on September 7, 2023, Spencer posted the police report attached to Miller's earlier posting with the caption, "Just a reminder of the type of person who tries to run for office and coach kids in Boardman." Spencer Decl. ¶ 15, Ex. 9.

Finally, also on September 7, Spencer again commented in the same thread, referencing Tallman's alleged conduct.



Spencer Decl. ¶ 16, Ex. 10.

Tallman alleges that these statements are false. Compl. ¶16. Tallman filed this action on September 18, 2023, and it was removed to this Court on November 29, 2023. Def.'s Notice of Removal, ECF 1. Tallman's complaint alleges that Spencer's Facebook statements constitute defamation, defamation per se, and false light. Compl. ¶¶ 24-39.

Page 5 – FINDINGS AND RECOMMENDATION

**STANDARDS**

Oregon, like many states, has an anti-SLAPP statute meant to protect individuals from "SLAPP" lawsuits, or "Strategic Lawsuits Against Public Participation." *Staten v. Steel*, 222 Or. App. 17, 30 (2008) (discussing ORS § 31.150). Oregon's anti-SLAPP statute provides an "inexpensive and quick process by which claims that might infringe on the right to petition and free speech on public issues c[an] be evaluated to determine if they [are] frivolous." *Page v. Parsons*, 249 Or. App. 445, 461 (2012). Specifically, the statute "allows defendants who claim that the litigation against them is a strategic attempt to chill their participation in public affairs to expeditiously obtain dismissal before incurring significant litigation expenses by filing, instead of an answer, a 'special motion to strike' the complaint." *Clackamas River Water v. Holloway*, 261 Or. App. 852, 854 n.1 (2014).

The statute uses a two-step, burden-shifting framework. "First, the court must determine whether the defendant has met its initial burden to show that the claim against which the motion is made 'arises out of' one or more protected activities described in subsection (2)." *Young v. Davis*, 259 Or. App. 497, 501 (2013) (quoting ORS 31.150(3)). Subsection (2) defines protected activities to include those that are "oral or written statements made in governmental proceedings or in a public forum in connection with an issue of public interest, as well as any other exercise of the right of speech related to an issue of public interest." *Handy v. Lane Cnty.*, 274 Or. App. 644, 651 (2015).[3]

---

[3] Tallman concedes that the Complaint on its face satisfies the first prong of the anti-SLAPP statute, and the Court agrees. Opp'n to Mot. to Strike 15. Specifically, Spencer is being sued for comments he made on Facebook about the alleged sexual misconduct by Tallman. Statements about Tallman's sexual conduct as an employer and his alleged criminal behavior are of public concern. Spencer's comments are a "written statement…. in a place open to the public or a public forum in connection with an issue of public interest." ORS 31.150(2).

Second, the burden shifts to the plaintiff to establish a "probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a prima facie case." *Young*, 259 Or. App. at 501 (quoting ORS 31.150(3)). The special motion is denied if the plaintiff meets that burden. *Id.* Oregon courts have interpreted "probability" of prevailing on the claim as a "low bar," requiring substantial evidence to support a prima facie claim against the defendant. *Id.* at 508.

"[W]hen an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018). When the motion challenges the factual sufficiency of a claim, then the Court applies the Rule 56 standard and "discovery must be allowed, with opportunities to supplement evidence based on the factual challenges, before any decision is made by the court." *Id.*

## DISCUSSION

Spencer moves to dismiss Tallman's claims under Oregon's anti-SLAPP statute, arguing that his statements are constitutionally protected and provide for no colorable claim of defamation or false light. Specifically, Spencer argues that Tallman is a public figure, thereby requiring Tallman to show actual malice, not mere negligence by Spencer. Def.'s Mot. 11. Spencer then argues that his Facebook posts did not constitute a statement of objective fact and therefore cannot be actionable. *Id.* at 18-20. He also argues that Tallman failed to make a plausible showing of negligence by Spencer and, moreover, failed to provide sufficient facts to meet the "probability" anti-SLAPP standard for his claims of defamation, defamation per se, and

Page 7 – FINDINGS AND RECOMMENDATION

false light. *Id.* at 11-15. Finally, the parties dispute whether discovery should be permitted if the motion is otherwise granted. Opp'n to Mot. 25.

Having fully considered the parties' arguments, this Court finds that Tallman is not a general- or limited-purpose public figure, and two of Spencer's statements were of objective fact. But the court further finds that Tallman's complaint fails to make a plausible showing of negligence by Spencer, which is required under binding Ninth Circuit precedent in *Obsidian Fin. Grp., LLC v. Cox*, 740 F.3d 1284, 1289 (9th Cir. 2014). Accordingly, Tallman's claims are subject to dismissal without prejudice under Fed. R. Civ. P. 12(b)(6), and Spencer's anti-SLAPP motion should be granted it in its entirety, without further discovery at this time. Thus, this Court recommends that this anti-SLAPP motion be GRANTED without further discovery and that Tallman should be granted leave to amend.

I.      **Four statements are alleged in the complaint and within the limitations period.**

As a threshold matter, this Court only considers the four allegedly defamatory statements, which are set forth above, that are within the applicable limitations period and alleged in the complaint.

In Oregon, claims for defamation and false light have a one-year statute of limitation. ORS 12.120(2); *Magenis v. Fisher Broad., Inc.*, 103 Or. App. 555, 558-60 (1990). The statute of limitation begins to run upon publication. *Bock v. Collier*, 175 Or. 145, 148 (1944). Here, the parties agree that the statements published by Spencer before September 18, 2022, are outside the statute of limitations. Opp'n to Mot. 19. That includes the statements alleged in paragraphs 8 and 9 of the complaint. Accordingly, this Court will not consider Spencer's allegedly defamatory statements made prior to September 18, 2022.

Page 8 – FINDINGS AND RECOMMENDATION

The complaint must also set forth the actual defamatory statements. *Rice v. Comtek Mfg. of Oregon, Inc.*, 766 F. Supp. 1539, 1541 (D. Or. 1990) ("An allegation of defamation is subject to dismissal if it fails to set out the actual words published."). A plaintiff facing an anti-SLAPP motion may not amend his allegations through declarations. *See Simmons v. Allstate Ins.*, 92 Cal. App. 4th 1068, 1073 (2001) (so holding under California's anti-SLAPP statute contemporaneous with Oregon's enactment). Thus, while Tallman asserts that "at least seven of Spencer's defamatory statements are not time barred," Opp'n to Mot. 19, only the four statements pleaded in the complaint will be considered for purposes of this anti-SLAPP motion.

## II.     Tallman is not a general- or limited-purpose public figure.

Defamation claims brought by public figures are subject to heightened standards. When the plaintiff is a public figure, there is a constitutional privilege that requires the plaintiff to prove that the statements were made with "actual malice"—i.e., that the defendant knew that the statement was false or showed reckless disregard for the truth. *Curtis Publ'g Co. v. Butts and Associated Press v. Walker*, 388 U.S. 130, 164-65 (1967) (Warren, C.J., concurring). Public figures can be general-purpose public figures or limited-purpose public figures. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974). A general-purpose public figure is one who achieves "such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts." *Id.* "Absent clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed [a general-purpose public figure]." *Id.* at 352.

A limited-purpose public figure is one who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Id.* at 351. Unlike a general-purpose public figure, a limited-purpose public figure loses

Page 9 – FINDINGS AND RECOMMENDATION

protections only insofar as the defamatory controversy relates to the individual's role in a public controversy. *See Wheeler v. Green*, 286 Or. 99, 114, 116–17 (1979). To determine limited-public figure status, courts look to "the nature and extent of [the person's] participation in the particular controversy giving rise to the defamation." *Gertz*, 418 U.S. at 352. Specifically, courts apply a three-part test to make the assessment, asking (i) whether a public controversy existed when the statements were made, (ii) whether the alleged defamation is related to the plaintiff's participation in the controversy, and (iii) whether the plaintiff voluntarily injected itself into the controversy for the purpose of influencing the controversy's ultimate resolution. *Makaeff v. Trump Univ.*, 715 F.3d 254, 266 (9th Cir. 2013) (citing *Gertz*, 418 U.S. at 351-52). A public controversy is a controversy that "affects the general public or some segment of it." *Id.* at 267.

Tallman does not possess the "pervasive" public characteristics needed to qualify as a general-purpose public figure. He also does not qualify as a limited-purpose public figure because there is no nexus between the subject matter of the defamatory statement and the purpose for which Tallman is a public figure.

Under *Gertz's* first element—whether the "controversy" existed at the time of the statement—Tallman ran for office four times between 2019 and 2023, and he may well run again. Tallman was no longer running for office, but that does not negate his status as a limited-purpose public figure because "the passage of time does not alter an individual's status as a limited purpose public figure" for that specific controversy. *Partington v. Bugliosi*, 56 F.3d 1147, 1152 n.8 (9th Cir. 1995). The Court agrees with Spencer that the public controversy existed at the time the statements were made, even though the most recent campaign had ended.

But Spencer does not prevail on the second and third elements under *Gertz*, which ask whether the alleged defamation is related to Tallman's public participation and whether Tallman

Page 10 – FINDINGS AND RECOMMENDATION

injected himself into the controversy. "Limited purpose public figures are exactly that—public figures for a limited purpose. They must have voluntarily injected themselves into the controversy over which the alleged defamation relates." *Addison v. City of Baker City*, 258 F. Supp. 3d 1207, 1241 (D. Or. 2017), *aff'd*, 758 F. App'x 582 (9th Cir. 2018). It is therefore critical to the analysis that the subject of Tallman's public exposure— running for political office several times—is related to Spencer's statements. But three of Spencer's statements make no reference to Tallman's campaigns or his fitness to serve in any of these capacities and are therefore unrelated to Tallman's public participation.

To be sure, Spencer's statement offering "a reminder of the type of person who tries to run for office and coach kids in Boardman" is related to Tallman's past runs for office. But at the time that statement was made, Tallman was not actively seeking office, and there is no evidence that Tallman had "thrust [himself] to the forefront of this particular controversy . . . in order to influence the resolution of the issues involved." *See Makaeff*, 715 F.3d at 267.[4] Indeed, there is no evidence that that statement was made in response to any actions taken by Tallman. Spencer therefore cannot meet the third prong of *Gertz* with respect to that statement.

In sum, because all three prongs under *Gertz* are not satisfied with respect to each statement, Tallman is not a limited-purpose public figure.

### III. Two of Spencer's statements imply an assertion of objective fact.

"[T]o determine whether a defamatory statement is protected under the First Amendment, the first question is whether the statement involves a matter of public concern. If it does, then the dispositive question is whether a reasonable factfinder could conclude that the statement implies

---

[4] Even if Tallman was a limited-purpose public figure for the purposes of that particular statement, for reasons discussed below, the statement does not imply an assertion of objective fact. Accordingly, it is not actionable on that alternative ground.

an assertion of objective fact." *Neumann v. Liles*, 358 Or. 706, 718-19 (2016). Here, there is no dispute that the statements at issue–allegations that Tallman was involved in crimes–are matters of public concern. *Obsidian Fin.*, 740 F.3d at 1292 ("Public allegations that someone is involved in crime generally are speech on a matter of public concern.").

Courts apply a three-part framework to determine whether the statement implies an assertion of objective fact: (1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact, (2) whether the defendant used figurative or hyperbolic language that negates the impression, and (3) whether the statement is susceptible of being proved true or false. *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1053 (9th Cir. 1990). Courts do not examine statements independently or in isolation; they consider the "work as a whole, the specific context in which the statements were made, and the statements themselves to determine whether a reasonable factfinder could conclude that the statements imply a false assertion of objective fact and therefore fall outside the protection of the First Amendment." *Neumann*, 358 Or. at 719.

The first statement pled within the statute of limitations was Spencer's statement responding to April Collier's August 25, 2023, Facebook post. There, he wrote, "predators have a way of squeezing through the cracks and the only way to keep them in the light is through the public forums. This isn't opinion. This is a man who victimized children and capitalized on their fear of testifying." Compl. ¶ 11. His second statement was:

> when a victim is too scared to sit on the witness stand and it's word vs word, then it's hard to take something to trial. However, when there is multiple victims, and the predator all but boasting about getting away with it, it's pretty easy to connect the dots and see the true colors. Protect the children at all costs.

Compl. ¶ 12.

Applying the first part of the *Neumann* framework, the tenor of those two statements do not tend to negate the impression of an objective fact because the first explicitly states that it is not an "opinion." Second, the Court looks to whether the use of "figurative or hyperbolic language negates the impression that [defendant] was asserting objective facts." *Neumann*, 358 Or. at 721. Even if the term "predatory" can at times be hyperbolic, the overall statement does not negate the impression that Spencer is describing objective facts. Again, he explicitly said that he was not just stating his opinion. Spencer is stating that Tallman "is a man who victimized children," and that that is not "opinion." Third, the tenor of the statement is an explicit accusation of sexual misconduct. As other courts have found, such a question of guilt or innocence is capable of being true or false. *See Wahab v. Wahab*, No. 3:23-cv-00098-SB, 2023 WL 5035662, at *11 (D. Or. August 8, 2023). Thus, the first two statements are statements of objective fact.

The Court finds that Spencer's next two comments, as pled, are opinion and not statements of objective fact. First, Spencer posted the police report that had previously been shared by Miller and included the caption, "Just a reminder of the type of person who tries to run for office and coach kids soccer in Boardman." Compl. ¶ 14. Here, Spencer is passing judgment on the kind of person he believes runs for office and coaches kids. It is not the kind of statement that is capable of being proven true or false because it describes his view about people who face such accusations.

Next, Tallman alleges that Spencer claimed he "is a predator and had touched the 'private areas' of a girl twenty years younger than him." Compl. ¶ 15. But Tallman's characterization of the statement fails to consider its full context as required under *Neumann*, 358 Or. at 719. The full comment was responding to a commenter who had questioned whether Tallman was guilty,

Page 13 – FINDINGS AND RECOMMENDATION

given that the police department did not ultimately file charges. *See* Spencer Decl. ¶ 16, Ex. 10. Spencer then responded:

> [I]f your daughter came to you and said that a man, 20 years older than her, touched her private areas, would you say to her 'he supposedly touched you'? Are you that thick that you are willing to look past the actions of a predator? You know, they tend to defend their own kind. Makes you wonder.

*Id.* Here, Spencer is passing judgment about whether he believes Miller's allegations. That statement is akin to those seen in *Campos v. Jensen*, 296 Or. App. 402, 403-05 (2019), in which the defendant's friend—not the defendant herself—had accused the plaintiff of sexual misconduct. There, the statements at issue were the defendant's online posts that the court determined were opinion statements expressing that the defendant believed her friend's story. *Id.* at 408-14. Here too, the statements are not capable of being proven true but instead evince Spencer's opinion about the veracity of the allegations.

In sum, this Court finds that the first two statements that Tallman pleaded are actionable assertions of fact, while the latter two are not. Accordingly, the initial two statements are not entitled to First Amendment privilege.

## IV. Tallman has not established a probability he will prevail on the claims.

### A. Tallman was required to plead negligence.

The First Amendment requires a "negligence standard for private defamation actions" involving a matter of public concern. *Gertz*, 418 U.S. at 350; *Obsidian Fin.*, 740 F.3d at 1289. Thus, although two of Tallman's claims do not require a showing of negligence under Oregon state law, Tallman is required to plead and prove negligence with respect to each of his claims.[5]

---

[5] Under Oregon state law, a plaintiff alleging defamation or defamation per se is not required to plead or prove negligence with respect to the falsity of the statement. *See Neumann*, 358 Or. at 711 (providing defamation's three elements: (1) the making of a defamatory statement, (2) publication of the defamatory material to a third party, and (3) resulting harm from the publication of the statement.); *Herrera v. C & M Victor Co.*, 265 Or. App. 689, 701 (2014)

Page 14 – FINDINGS AND RECOMMENDATION

Despite this clear precedent, Tallman argues that no showing of negligence is necessary for his defamation and defamation per se claims, relying on Oregon Supreme Court precedent that a showing of negligence is not required unless the defendant is a member of the media. *Harley-Davidson Motorsports, Inc. v. Markley*, 279 Or. 361, 366, 371 (1977); *Lowell v. Wright*, 369 Or. 806, 834 (2022). Indeed, in upholding the media vs. non-media distinction, *Lowell* expressly rejected *Obsidian Finance*. *Lowell*, 369 Or. at 837-42. Tallman asserts that because this defamation action arises under Oregon state law, this Court should follow the decision of the Oregon Supreme Court in *Lowell* and not the Ninth Circuit in *Obsidian Finance*. Opp'n to Mot. 18. This Court disagrees.

"A state appellate court's announcement of a rule of law is a datum for ascertaining *state law* which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Poublon v. C. H. Robinson Co.*, 846 F.3d 1251, 1266 (9th Cir. 2017) (emphasis added, citations and quotations omitted). On the other hand, district courts are bound to follow the precedents of their own circuit. *Zuniga v. United Can Co.*, 812 F.2d 443, 450 (9th Cir. 1987). Thus, the resolution of this issue turns on whether *Lowell* involves an issue of the interpretation of Oregon state law. It does not.

*Lowell* expressly frames the issue considered as whether the context of a defamation claim "matters for the purposes of whether and how *the First Amendment* must alter state common law." *Lowell*, 369 Or. at 838 (emphasis added). And *Obsidian Finance* involved the Ninth Circuit's analysis of how the First Amendment alters the requirements for a defamation

---

(noting that defamation per se requires only proof of the first two elements of defamation). On the other hand, false light claims require proof that the defendant has knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed. *Muresan v. Philadelphia Romanian Pentecostal Church*, 154 Or. App. 465, 475 (1998).

Page 15 – FINDINGS AND RECOMMENDATION

suit brought under Oregon state law. This Court is bound to follow *Obsidian Finance*, and it therefore concludes that Tallman was required to plead and prove negligence.

### B. Tallman's complaint fails to plausibly allege that Spencer was negligent.

Tallman fails to plead facts that state or even imply negligence by Spencer. Critically, the complaint fails to allege any facts relating to how Spencer learned of the allegations or how Spencer failed to exercise due care in determining the truth of the allegations. Tallman alleges that police investigated the allegations, "concluded they were unfounded," and that he was not prosecuted. Compl. ¶ 18. But even assuming the truth of that allegation, it does not follow that Spencer was negligent or reckless as to the truth of the allegations made by his stepsister. At the very least, this Court cannot infer negligence based on the lack of prosecution. In sum, without facts that would plausibly demonstrate negligence, Tallman's claims are subject to dismissal under a Rule 12(b)(6) standard.

That applies to each of Tallman's claims. Tallman's claim for defamation makes no allegations regarding negligence or culpability. *See* Compl. ¶¶ 24-27. Tallman's claim for defamation per se alleges that Spencer "failed to use reasonable care to determine the truth or falsity of his statements." Compl. ¶ 33. Tallman's claim for false light alleges that Spencer "knows his posts [were] false or acted in reckless disregard as to the falsity of the publicized matter." Compl. ¶ 38. But there are no facts pleaded that support these allegations, and "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Accordingly, each of Tallman's claims are subject to dismissal under a Rule 12(b)(6) standard because Tallman was required to plead facts that would plausibly demonstrate negligence by Spencer but has failed to do so. Accordingly, Spencer's motion to strike should be granted.

## V. Tallman's request for discovery should be denied.

Tallman next argues that discovery must be permitted if the Court would otherwise grant Spencer's motion. Opp'n to Mot. 25. As the Ninth Circuit has held, when an anti-SLAPP motion challenges the legal sufficiency of a claim, the district court should apply the Rule 12(b)(6) standard and consider "whether a claim is properly stated." *Planned Parenthood*, 890 F.3d at 834. But a district court should apply the Rule 56 standard, and allow discovery, if the motion "challenges the factual sufficiency of a claim." *Id.* As noted above, Tallman's claim fails under the Rule 12(b)(6) standard because it fails to plead plausible facts of negligence. The discovery request should therefore be denied.

## VI. Tallman should be granted leave to amend.

Although this Court concludes that the motion should be granted, Tallman should be granted leave to amend. "[G]ranting a defendant's anti-SLAPP motion to strike a plaintiff's initial complaint without granting the plaintiff leave to amend would directly collide with Fed. R. Civ. P. 15(a)'s policy favoring liberal amendment." *Verizon Delaware, Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004). Here, Tallman should be provided with the opportunity to amend his complaint to state facts that would demonstrate the requisite level of culpability.[6]

## RECOMMENDATION

Defendant's Motion to Strike, ECF 10, should be GRANTED without further discovery and that Plaintiff should be granted leave to amend.

---

[6] At oral argument, counsel for Tallman conceded that he "likely d[id] not have facts asserted to support a negligence level of culpability" but asserted that the complaint could be amended to include such facts. ECF 21.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to de novo consideration of the factual issues addressed herein and will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge. These Findings and Recommendation are not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.

DATED this 17th day of September, 2024.

_____
ANDREW HALLMAN
United States Magistrate Judge