IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JONATHAN TALLMAN**, | Case No. 2:23-cv-1773-HL |
| Plaintiff, | **ORDER** |
| v. | |
| **DILLON SPENCER**, | |
| Defendant. | |

**Michael H. Simon, District Judge.**

United States Magistrate Judge Andrew D. Hallman issued Findings and Recommendation in this case on September 17, 2024. Judge Hallman recommended that this Court grant Defendant Dillon Spencer's motion to strike and grant Plaintiff Jonathan Tallman leave to amend. Tallman did not object. Spencer objected only to the portion of the Findings and Recommendation concluding that Tallman is not a public figure. Spencer also requests dismissal without leave to amend. Tallman responded to Spencer's arguments.

## STANDARDS

Under the Federal Magistrates Act ("Act"), the court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). If a party objects to a magistrate judge's findings and recommendations, "the court

shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3).

If no party objects, the Act does not prescribe any standard of review. *See Thomas v. Arn*, 474 U.S. 140, 152 (1985) ("There is no indication that Congress, in enacting [the Act], intended to require a district judge to review a magistrate's report to which no objections are filed."); *United States. v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (holding that the court must review *de novo* magistrate judge's findings and recommendations if objection is made, "but not otherwise").

Although review is not required in the absence of objections, the Act "does not preclude further review by the district judge[] *sua sponte* . . . under a *de novo* or any other standard." *Thomas*, 474 U.S. at 154. Indeed, the Advisory Committee Notes to Rule 72(b) of the Federal Rules of Civil Procedure recommend that "[w]hen no timely objection is filed," the court review the magistrate judge's findings and recommendations for "clear error on the face of the record."

## BACKGROUND

Tallman lives in the city of Boardman, Oregon, in Morrow County. He owns and operates a coffee shop in Boardman called, "The Farmer's Cup." ECF 1-1 ¶ 5. In November 2020, Tallman ran for election for the office of Mayor of Boardman but did not win. ECF 14-1 ¶ 4. In May 2021, Tallman ran for election for a seat on the Port of Morrow Board of Commissioners but did not win. *Id.* ¶ 5. In November 2022, Tallman ran for election for a seat on the Boardman City Council but did not win. *Id.* ¶ 6. In May 2023, Tallman again ran for election for a seat on the Port of Morrow Board of Commissioners but did not win. *Id.* ¶ 7.

Spencer also is a resident of Boardman. Spencer is the stepbrother of Michaela Miller, ECF 10 at 4, who began working at The Farmer's Cup in April 2019, when she was 16 years old, ECF 13 ¶ 3. Tallman hired Miller and was her supervisor. *Id.* According to Miller, shortly after

she began working for Tallman, she "experienced what [she] now know[s] to be highly inappropriate behaviors from a 40-year-old man toward a 16-year-old girl." *Id.* ¶ 6. She describes that behavior in detail in her declaration. *Id.* ¶¶ 6-19. She adds that "Tallman would only engage in these behaviors when there wasn't another adult present" and that she "did not feel safe working with Tallman." *Id.* ¶¶ 14, 19. Miller also states that she witnessed a friend and co-worker experience similar behavior from Tallman. *Id.* ¶ 18. In August 2019, Miller and her friend were at sports practice. They discussed Tallman's behavior and were overheard by their coach, who was a mandatory reporter under Oregon law. The coach reported what he had heard to the Boardman Police Department. Shortly thereafter, Miller, accompanied by her parents, was interviewed by the Boardman Police, who prepared a report. *Id.* ¶¶ 20-22. No charges were ever brought against Tallman. ECF 14-1 ¶¶ 13-14.

On August 28, 2020, Spencer posted a message on the Boardman Oregon Community Info Facebook Page naming Tallman as a "child molester." ECF 1-1 ¶ 8; ECF 10 at 4-5; ECF 11-1 at 2. On September 1, 2020, Spencer posted another comment on this page stating that Tallman "has sexually assaulted multiple minors." ECF 1-1 ¶ 8; ECF 10 at 5; ECF 11-1 at 3. Then, on August 25, 2023, Spencer responded to another post on the Facebook page, describing Tallman as a "predator" who "victimized children." ECF 1-1 ¶¶ 11-12.

Tallman sent a cease-and-desist letter to Spencer on September 5, 2023. *Id.* ¶ 13. On September 7, 2023, Spencer posted the police report, captioning it: "Just a reminder of the type of person who tries to run for office and coach kids soccer in Boardman." *Id.* ¶ 14. On the same day, Spencer wrote that Tallman was a predator and had touched the "private areas" of a girl twenty years younger than him. *Id.* ¶ 15.

On September 18, 2023, Tallman sued Spencer in state court, asserting Oregon common law claims of defamation, defamation per se, and false light invasion of privacy. ECF 1-1. Spencer timely removed the case to federal court and then filed a motion to strike, under Oregon's Anti-SLAPP statute, Oregon Revised Statutes § 31.150. ECF 10. Spencer's motion was fully briefed, and Judge Hallman heard oral argument.

## DISCUSSION

The Court must decide whether Tallman is a public figure for purposes of federal constitutional analysis. Although Tallman's claims of defamation, defamation per se, and false light invasion of privacy are all brought under the common law of Oregon, it is "well established that state law defamation actions can be affected by the First Amendment rights of speakers." *Lowell v. Wright*, 369 Or. 806, 815 (2022). Indeed, as the Oregon Supreme Court has explained, if the plaintiff is a public figure for purposes of federal constitutional analysis, the plaintiff "must prove the false and defamatory statements were published with actual malice; *i.e.*, knowledge of falsity or reckless disregard of truth." *Bank of Or. v. Indep. News, Inc.*, 298 Or. 434, 441-42 (1985) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964)).

In 1971, the U.S. Supreme Court considered a lawsuit brought by Alphonse Roy, an unsuccessful primary candidate in an election for the U.S. Senate. *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 266-68 (1971). The Concord Monitor, a daily newspaper in Concord, New Hampshire, published by the Monitor Patriot Co., ran a column shortly before an election that referred to Roy as a "former small-time bootlegger." *Id.* at 266. The column was distributed by the North American Newspaper Alliance ("NANA"). *Id.* at 267. After losing the primary election, Roy sued both the Monitor's publisher and NANA in state court, alleging defamation. Roy prevailed, the New Hampshire Supreme Court affirmed, and the U.S. Supreme Court reversed. *Id.* at 270, 277.

As the Supreme Court explained:

> In *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80, we held
> that the First and Fourteenth Amendments require a federal rule
> that prohibits a public official from recovering damages for a
> defamatory falsehood relating to his official conduct unless he
> proves that the statement was made with actual malice—that is,
> with knowledge that it was false or with reckless disregard of
> whether it was false or not. . . . The approach of *New York Times*
> was to identify a class of person— there public officials—and a
> type of activity—there official conduct—and to require as to
> defamations respecting them a particularly high standard of
> liability—knowing falsehood or reckless disregard of the truth.
> *Later cases have made it clear that the applicability of this basic
> approach is not limited to those in public office or to the
> performance of official acts, or, for that matter, to conventional
> civil libel suits.*

*Id.* at 270-71 (quotation marks omitted) (emphasis added). The Court added: "Given the later

cases, it might be preferable to categorize a candidate as a '*public figure*,' if for no other reason

than to avoid straining the common meaning of words." *Id.* at 271 (emphasis added).

The Supreme Court further noted that "anything which might touch on an official's

fitness for office is relevant." *Id*. at 273. The Court continued:

> Indeed, whatever vitality the 'official conduct' concept may retain
> with regard to occupants of public office, it is clearly of little
> applicability in the context of an election campaign. The principal
> activity of a candidate in our political system, his 'office,' so to
> speak, consists in putting before the voters every conceivable
> aspect of his public and private life that he thinks may lead the
> electorate to gain a good impression of him.

*Id.* at 274 (citation omitted). Further, "[a]ny test adequate to safeguard First Amendment

guarantees in this area must go far beyond the customary meaning of the phrase 'official

conduct.'" *Id.* The Court concluded:

> We therefore hold as a matter of constitutional law that a charge of
> criminal conduct, no matter how remote in time or place, can never
> be irrelevant to an official's or a candidate's fitness for office for
> purposes of application of the 'knowing falsehood or reckless
> disregard' rule of *New York Times Co. v. Sullivan*.

*Id.* at 277.

Eighteen years after the Supreme Court decided *Roy*, it addressed another libel suit brought by another *unsuccessful* candidate for public office. In this case, an unsuccessful candidate for a state judicial office brought a libel action against a newspaper. *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 659 (1989). Daniel Connaughton was the unsuccessful candidate for the office of Municipal Judge of Hamilton, Ohio. *Id.* at 660. He sued the publisher of a local newspaper that supported the reelection of the incumbent, James Dolan. *Id.* Shortly before the election, one of Dolan's staff members resigned and was arrested on charges of bribery. *Id.* The newspaper ran a front-page story quoting a witness who testified before the grand jury that Connaughton offered the witness and her sister jobs and a trip to Florida "in appreciation" for their help in investigating Dolan's former staff member. *Id.*

Throughout the Supreme Court's opinion, the Court referred to Connaughton as a "public figure," even though he was only an unsuccessful candidate. The Supreme Court also stated:

> There is little doubt that public discussion of the qualifications of a
> *candidate* for elective office presents what is probably the
> strongest possible case for application of the *New York Times* rule,
> and the strongest possible case for independent review.

*Id.* at 686-87 (quotation marks and citation omitted) (emphasis added). The Supreme Court then quoted the following from James Madison in 1800, "just nine years after ratification of the First Amendment:"

> "Let it be recollected, lastly, that the right of electing the members
> of the government constitutes more particularly the essence of a
> free and responsible government. The value and efficacy of this
> right depends on the knowledge of the comparative merits and
> demerits of the *candidates* for public trust, and on the equal
> freedom, consequently, of examining and discussing these merits
> and demerits of the candidates respectively." 4 J. Elliot, Debates
> on the Federal Constitution 575 (1861).

*Id.* at 687 (emphasis added); *see also Ocala Star-Banner Co. v. Damron*, 401 U.S. 295, 299 (1971) (holding that in respondent's "status as a candidate for the office of county tax assessor, he fell within the same rule" regarding defamation about public officials (citing *Monitor Patriot Co.*, 401 U.S. 265)).

As previously noted, Tallman ran for local office in Boardman in November 2020, May 2021, November 2022, and May 2023. Also as previously noted, Spencer posted the statements at issue in September 2020 and August and September 2023. Tallman filed his lawsuit just a few days after the second set of statements, in September 2023. Had Spencer posted his statements just three months earlier, sometime before the election in May 2023, there would be nothing about this issue that needs any further discussion.[1] But at the time that Spencer posted his 2023 statements, Tallman was not currently a candidate for any public office.

The relevant question, then, is whether, under the undisputed facts presented here, that distinction matters. The Court concludes that it does not. Between November 2020 and May 2023, Tallman ran for local office four times, literally once every year in the four years that immediately preceded Spencer's posting. Further, there is no evidence to suggest that but for Spencer's postings in August and September 2023, Tallman's repeated practice of running for office every year would not have continued. Thus, in August and September 2023, Tallman was still a public figure, as a recent and perennial candidate for public office, and anything that might reasonably bear on his fitness for public office, including Spencer's allegations, are protected under the rule established in *New York Times v. Sullivan*.

---

[1] Indeed, nothing about the issue of Spencer's statements in September 2020 needs further discussion, as Tallman was running for mayor at the time.

The situation might be different for someone who last ran unsuccessfully for public office several decades ago and then, several decades later, was the subject of allegedly defamatory statements. The Court, however, need not answer here whether that person would still be a public figure. Under the undisputed facts presented, Tallman was a "general purpose" public figure[2] in August and September 2023 simply by virtue of his running for various public offices in November 2020, May 2021, November 2022, and May 2023.

## CONCLUSION

The Court ADOPTS IN PART the Findings and Recommendation (ECF 23). The Court declines to adopt the Findings and Recommendation to the extent that it finds that Tallman is not a public figure but adopts the remainder of the Findings and Recommendation. The Court GRANTS Spencer's motion to strike (ECF 10) and grants Tallman leave to amend, if he believes he can cure the deficiencies identified in the Findings and Recommendation.

**IT IS SO ORDERED**.

DATED this 4th day of November, 2024.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

---

[2] A "general purpose" public figure is one who achieves "such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974).